1  MICHAEL J. BETTINGER (STATE BAR NO. 122196)
   mike.bettinger@klgates.com
2  RACHEL R. DAVIDSON (STATE BAR NO. 215517)
   rachel.davidson@klgates.com
3  MIKAL J. CONDON (STATE BAR NO. 229208)
   mikal.condon@klgates.com
4  J. MICHAEL KEYES (STATE BAR NO. 262281)
   mike.keyes@klgates.com
5  K&L GATES LLP
   4 Embarcadero Center, Suite 1200
6  San Francisco, CA 94111
   Phone: (415) 882-8200
7  Fax:    (415) 882-8220

8  Attorneys for Defendant
9  Carma Laboratories, Inc.

10

11

12                    **UNITED STATES DISTRICT COURT**

13                    **CENTRAL DISTRICT OF CALIFORNIA**

14

| | |
|---|---|
| 15  MICHAEL TURCIOS, on behalf of himself and all others similarly situated, | Case No. CV12-8487- JGB (Ex) |
| 17                                    Plaintiff, | **CARMA LABORATORIES INC.'S NOTICE OF MOTION AND MOTION FOR RULE 11 SANCTIONS** |
| 18         vs. | |
| 19  CARMA LABORATORIES, INC., a Wisconsin corporation, | Date: May 6, 2013 |
| 21                                    Defendant. | Time: 9:00 a.m. Location: Courtroom 1 Judge: Hon. Judge Jesus G. Bernal |

23

24

25

26

27

28

## **NOTICE OF MOTION**

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on May 6, 2013 at 9:00 a.m. or as soon thereafter as the parties may be heard, in the courtroom of the Honorable Jesus G. Bernal, Courtroom 1, located at 3470 Twelfth Street Riverside, California 92501-3801, Defendant Carma Laboratories, Inc. ("Carma Labs") will, and hereby does, move for an order for Rule 11 sanctions against Plaintiff's counsel, Christopher P. Ridout, Caleb RH Marker, and the law firm of Ridout Lyon + Ottoson LLP. Fed. R. Civ. P. 11(c)(1).

This motion is made on the grounds that Plaintiff's counsel violated Fed. R. Civ. P. 11(b) by improperly certifying legal and factual contentions in the Complaint and Amended Complaint without evidentiary support, and for filing the Complaint and Amended Complaint for an improper purpose. Carma Labs seeks sanctions including the dismissal with prejudice of the Amended Complaint, and an Order instructing Plaintiff's counsel to pay reasonable attorneys' fees and other expenses directly resulting from their violation of Rule 11, including costs and fees associated with bringing this motion.

Carma Labs has given Plaintiff's counsel 21 days since service of this Motion to withdraw its Amended Complaint as required by Rule 11(c)(2), and Plaintiff's counsel refuses to do so. Counsel for Carma Labs has made a good faith attempt to meet and confer with Plaintiff's counsel pursuant to Civil Local Rule 7-3.

//
//
//
//
//
//

This Motion is based upon this Notice of Motion, the Memorandum of Points and Authorities, the supporting Declarations of Rachel Davidson, Paul Woelbing and any other argument or evidence that may be presented in advance of or at any hearing of this Motion.

K&L GATES LLP

Dated:  April 8, 2013                    By:  */s/Rachel Davidson*
                                         Rachel R. Davidson
                                         Mikal J. Condon
                                         Attorneys for Defendant Carma Labs

# <u>TABLE OF CONTENTS</u>

<u>Page(s)</u>

NOTICE OF MOTION..................................................................................i

I.       INTRODUCTION AND SUMMARY OF THE ARGUMENT .................1

II.      FACTUAL BACKGROUND .................................................................2

      A.       The Evolution of the Iconic Carmex Jar.................................................2

      B.       The Pleadings and Putative Class Action ............................................4

      C.       Mr. Turcios's Deposition Testimony .....................................................5

            (a)      Mr. Turcios Was Not Deceived By
                      Carma Labs' Purportedly Deceptive
                      Packaging of the Green Carmex Jar........................................9

            (b)      Mr. Turcios Does Not Believe That He
                      Has Received the 0.25 Ounces of Carmex
                      As It Says on the Product Label ...............................10

            (c)      Mr. Turcios Does Not Find the "Thick Bottom"
                      of the Original Carmex Jar Deceptive ....................................13

            (d)      Mr. Turcios Did Not Rely on Carma Labs'
                      Allegedly Misleading Packaging in Making
                      His Purchasing Decisions ...............................16

             (e)      The Allegedly Misleading Packaging Was
                      Not the "But For" Cause of Mr. Turcios's
                      Carmex Purchases ...............................17

             (f)      Mr. Turcios Does Not Share a Common
                      Interest With the Putative Class...............................18

III.     ARGUMENT ................................................................................18

      A       RLO's Nonexistent Inquiry Into The Factual
           Allegations Is Objectively Unreasonable ..............................19

      B.       The Complaint and Amended Complaint Were
           Filed for an Improper Purpose............................20

      C.       The Contentions in the Complaint Have No Basis
           In Fact ....................................21

IV.  CONCLUSION ................................................................24

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Anderson v. Cnty. Of Montgomery*
  111 F.3d 494 (7th Cir. 1997)................................................................20

*Blackwell v. SkyWest Airlines, Inc.*
  245 F.R.D. 453(S.D.Cal. 2007)...........................................................23

*Bodner v. Oreck Direct, LLC*
  No. C 06-4756, 2007 WL 1223777 (N.D. Cal. April 25, 2007) .............21

*Business Guides, Inc. v. Chromatic Comms. Enters., Inc.*
  498 U.S. 533 (1991) ...........................................................................18

*Coburn Optical Indus., Inc. v. Cilco, Inc.*
  610 F. Supp. 656 (M.D.N.C. 1985).......................................................20

*Copple v. Astrella & Rice, P.C.*
  442 F. Supp. 2d 829 (N.D. Cal. 2006) ..................................................18

*Cnty. of Fresno v. Lehman*
  229 Cal.App.3d 340 (280 Cal.Rptr. 310 (1991)) ...................................23

*Huettig & Schromm, Inc. v. The Landscape Contractors Counsel*
  790 F.2d 1421 (9th Cir. 1986)..............................................................19

*In re Keegan Mgmt. Co. Securities Litig.*
  78 F.3d 431 (9th Cir. 1996).................................................................21

*In re Cooper Companies Inc. Securities Litigation.*
  254 F.R.D. 628 (C.D.Cal. 2009) ..........................................................21

*In re Kunsler*
  914 F.2d 505 (4th Cir. 1990)...............................................................19

*Islamic Shura Council of S. California v. F.B.I.*
  278 F.R.D. 538 (C.D. Cal. 2011) .........................................................19

*Lai v. Anthony*
  Civ. Nos. 88–00565MP, 90–00828 DAE, 1991 WL 208443 (D. Hawaii July 5,
  1991)...................................................................................................21

---

*Meachum v. Outdoor World Corp.*
  171 Misc. 2d 354 (N.Y. Supp. 1996) ...................................................20

*Rothman v. Gen. Nutrition Corp., et al.*
  No. CV 11–03617 SJO (RZx), 2011 WL 6940490 (C.D. Cal. Nov. 17, 2011)........18

*Thompson v. RelationServe Media, Inc.*
  610 F.3d 628 (11th Cir. 2010)...................................................23

*Townsend v. Holman Consulting Corp.*
  929 F.2d 1358 (9th Cir. 1990)...................................................19

*Weisman v. Darneill*
  78 F.R.D. 669 (S.D.N.Y.1978) ...................................................21

**<u>STATUTES</u>**

California Business & Professions Code § 17208......................................23

California Civil Code § 1783...................................................23

California Code of Civil Procedure § 338(a)...................................................23

Federal Rule of Civil Procedure 11 .......................................................*passim*

## I.   __INTRODUCTION AND SUMMARY OF THE ARGUMENT__

This Rule 11 motion seeks sanctions against named plaintiff Michael Turcios's lawyers, Ridout Lyon + Ottoson ("RLO"), who certified the legal and factual contentions in the Complaint and Amended Complaint without evidentiary support, and filed those pleadings for an improper purpose.  RLO filed the Complaint and Amended Complaint without ever speaking or meeting with Mr. Turcios.  Yet, those pleadings made substantive allegations about Mr. Turcios's beliefs at the time he purchased the product, his understanding regarding the amount of product in the jar, his problems regarding the product, purported deception, alleged damages, and his adequacy as a class representative.   Those baseless facts and contentions were subsequently refuted by Mr. Turcios's own testimony.

The Complaint and Amended Complaint allege that consumers of Carmex are entitled to a refund of the purchase price because the packaging makes it appear that there is more product in the jar than there actually is.  Specifically, the pleadings allege that customers were misled by the thick bottom used in Carmex's original jar, as well as the concave bottom added in 2010 as part of a "green" initiative to save on plastic (while preserving the jar's iconic shape).   In fact, the jars have always contained the same 0.25 ounces of Carmex, have always had the same exterior dimensions, and customers (especially repeat customers like Mr. Turcios) are not deceived in any way.

Mr. Turcios learned about this lawsuit from his girlfriend—a legal secretary at RLO—who was discussing the apparently already-existing case with her mother, also an RLO employee.  Mr. Turcios never met his lawyers until two days before his deposition.  He never reviewed the Complaint, or the Amended Complaint, before they were filed; indeed, his first review of either was months *after* they were filed and only days before his deposition.  He has no understanding of the allegations in the case, and his testimony flatly contradicts many of the substantive allegations in the

CARMA LABS' MOTION FOR RULE 11 SANCTIONS
Case No. CV12-8487-JGB(Ex)

complaint.  It appears that all of his knowledge of the case (to the extent that he has any) comes from his attorneys.

In light of Mr. Turcios's undeniable and overwhelming ignorance regarding the nature of this action, the facts alleged, and the theories of relief sought against Carma Labs, it is clear that his counsel is the driving force behind this litigation.  It is undisputed that Plaintiff's counsel constructed this lawsuit before it had a plaintiff.  They then went in search of a stand in plaintiff—without bothering to determine if that plaintiff's factual history squared with the contentions in the already-drafted complaint.  The complaints in this action were filed without evidentiary support and for an improper purpose—to construct a lawsuit against Carma Labs with or without an aggrieved plaintiff.  This is not a permissible use of the judicial process.  Counsel's conduct warrants Rule 11 sanctions in the form of an award of attorneys' fees against Plaintiff's counsel, and dismissal of the Amended Complaint with prejudice.

## II.   FACTUAL BACKGROUND

### A.   The Evolution of the Iconic Carmex Jar

Carmex was invented by Alfred Woelbing in 1937.  Since that time and through today, the staple Carmex jar has been the same size and shape and has contained the same amount of product—0.25 ounces.  Indeed, Carmex's distinctive yellow and white opal jars are protected by trade dress.  (Woelbing Declaration ¶ 2.)[1]   Although Carma Labs switched from glass to solid plastic in 1996 because it could no longer consistently obtain quality glass, the plastic jars were exact duplicates of the original glass jars.  The interior volume of the container and amount of product sold remained the same: 0.25 ounces.  (Woelbing Declaration ¶¶ 3-4.)   The iconic yellow and white jar in production from 1937 through 2010 is hereinafter referred to as the "Original Carmex Jar."

---

[1] *See also, e.g.*,  CalRecycle, Business Waste Reduction, available at http://www.calrecycle.ca.gov/ReduceWaste/Business/FactSheets/Package.htm (last accessed March 14, 2013).

CARMA LABS' MOTION FOR RULE 11 SANCTIONS
Case No. CV12-8487-JGB(Ex)

In 2010, Carma Labs made the second change to the Carmex jars since the invention of the product in 1937.  In an effort to reduce the amount of plastic used in the creation of the Carmex jar, Carma Labs increased the concavity of the exterior bottom of its Carmex container.  (Hereinafter, the "Green Carmex Jar.")  This change allowed Carma Labs to reduce its carbon footprint, while still embracing its distinctive and trade dress protected shape and continuing to use the assembly line manufacturing unit that is the backbone of the Carma Labs operation.  The interior volume of the container and amount of product sold remained (and remains) the same as it has always been: 0.25 ounces.   (Woelbing Declaration ¶ 4.)

Carma Labs promoted its environmentally friendly change to its consumers and retailers.  Its website announced that the "Carmex Jar Goes Green," and promoted the change as part of Carmex's "constant[] . . . lookout for ways we can bring Carmex to you in more environmentally-friendly fashions without compromising our product." Carmex assured consumers that it had not "***changed the product or the amount – you still get .25 oz of the same moisturizing lip balm in each jar.  Now there is just less jar.***" (emphasis added.)  Carmex explained:

> We made the bottom of the jar more concave which uses **20% less plastic** in **every jar**. This small reduction in waste adds up quickly: we will reduce our plastic use by **70,000 pounds** each year! That **annual reduction of 35 *tons* of plastic** also means that we're saving 35 tons of freight from being shipped which means less fuel will be used.

(Woelbing Declaration Ex. A (emphasis added).)

Carma Labs' effort to make its products greener is consistent with the guidelines and/or requirements of many major retailers and state environmental agencies (including CalRecycle), which have requested or mandated that companies reduce their packaging and "go green."  (Woelbing Decl. ¶¶ 9-10.)   Carmex's long-time, loyal consumers were equally eager to see Carma Labs reduce its environmental impact, and heralded the change.   (Woelbing Decl. ¶8.)

**B.**     **The Pleadings and Putative Class Action**

This putative class action was filed on September 6, 2012, alleging violations of California's false advertising act, unfair competition law, and consumer legal remedies act arising from Carma Labs' sale of its iconic Carmex product in its trade dress protected yellow and white jars.[2]   The Amended Complaint alleges that the Carmex jar is (and has always been) misleading, because the Original Carmex Jar had a thicker bottom than the class deemed necessary, and because the Green Carmex Jar has a concave bottom.   Thus, the Amended Complaint alleges that both the Original and Green jars are not filled with as much product as the class believes the jars should be.   The class does not dispute that both the Original and Green Carmex jars are labelled as containing, and do contain, 0.25 ounces of product.   Indeed, throughout the Amended Complaint, the product is referred to as the ".25 oz plastic jar."   (*See, e.g.*, FAC ¶¶3, 30, 33, 34.)

Specifically with respect to the named plaintiff, Michael Turcios, the Amended Complaint makes the following representations:

- **Mr. Turcios Was Deceived.**   "Due to Defendant's deceptive and misleading packaging, Plaintiff, at the time of his purchase of Carmex, was unaware that the Carmex Jar included a false bottom, deceptive covering, and/or non-functional slack fill.   As a result, Plaintiff mistakenly believed that the product Carmex filled the entire Carmex Jar when, in fact, it did not."   (FAC ¶ 43 (emphasis added); "Plaintiff believed Defendant's representations that Carmex filled the Carmex Jar." (FAC ¶ 59).)

---

[2]  The Complaint was filed in state court.  Defendant removed the case to federal court on diversity grounds on October 4, 2012.  On December 13, 2012, the Court denied Plaintiff's Motion to Remand and granted Plaintiff leave to file a first amended complaint in order to seek actual damages under the CLRA.  (Docket No. 30.) Plaintiff filed a First Amended Complaint on December 20, 2012.  (Docket No. 32.) That pleading seeks actual damages under the CLRA, but the substantive allegations and factual contentions, particularly with respect to Mr. Turcios, are identical.   Thus, only the allegations in the Amended Complaint are discussed in detail in this motion.

4

- **Mr. Turcios Relied on Carma Labs' Deceptive Packaging.**  "Plaintiff detrimentally relied on Defendant's deceptive packaging and parted with his money as a result thereof, causing financial injury and loss." (FAC ¶ 5.)  "Plaintiff justifiably relied on Defendant's conduct, causing her/him [sic] injury." (FAC ¶ 59.)

- **Carma Labs' Deception Caused Mr. Turcios's Harm.**  "Had Plaintiff known that the product purchased did not fill the entire Carmex Jar, he would not have paid the premium price that he paid for it." (FAC ¶ 5.)  "Plaintiff would not have purchased Carmex, but for Defendant's misleading packaging of the product.  (FAC ¶ 59.)

- **Mr. Turcios Was Harmed Because He Believed He Was Getting More Product Than He Received.**  "In turn, Plaintiff paid a premium price for the Carmex that she [sic] purchased, believing Defendant's representations regarding the quantity being purchased."  "Plaintiff was injured in fact and lost money as a result of Defendant's conduct of improperly advertising Carmex through misleading packaging."  (FAC ¶ 59.)

- **Mr. Turcios Made His Purchases Within the Limitations Period.**  "*At relevant times during the Class Period* [four years or the length of the longest applicable statute of limitations for any claim asserted], Plaintiff purchased Defendant's product Carmex." (FAC ¶¶ 3, 30.)

- **Mr. Turcios is an Adequate Class Representative.**  "Plaintiff will fairly and adequately represent and protect the interests of the members of the Class. . . . Plaintiff has no interests contrary to the class members, and will fairly and adequately protect the interests of the class."  (FAC ¶ 35.)

## C.    Mr. Turcios's Deposition Testimony

In his deposition on March 1, 2013, it became apparent that Plaintiff's counsel, RLO, is the driving—and only—force behind this litigation.

Mr. Turcios's testimony makes clear that he had no problem with the Carmex jar—of which he stated he has purchased approximately 20 since he was 14—until he overheard his girlfriend and her mother, both RLO employees, discussing "the case":

Q   How did you come in contact with the lawyers that represent you today?

A   Um, through Elaine.

Q   Elaine?

A   Uh-huh.

Q   Elaine?  What's Elaine's last name?

A   Cruz.

Q   And who is Elaine Cruz?

A   She's works for Ridout + Lyon.

Q   She works for Ridout? And how do you know Elaine?

A   Her daughter's my girlfriend.

Q   And Elaine Cruz works for Ridout, the law firm that represents you today?

A   Right.

Q   And what's your girlfriend's name?

A   Marissa.[3]

[. . .]

Q   So you talked to Elaine Cruz about this case, right?

A   Yes.

Q   And what was the conversation?

A   Between me and Elaine?

Q   Yeah.

A   It wasn't actually between me and Elaine.  She was talking to Marissa one day about the case. [. . .] They were talking about the case one day, and I happened to be there.  And I overheard the conversation they were having with the Carmex case.  And I told them I had purchased it in the past.

---

[3] Mr. Turcios later testified that Marissa also works at RLO.  (Davidson Decl. Ex. A, Tr. 20:18-21.)

CARMA LABS' MOTION FOR RULE 11 SANCTIONS
Case No. CV12-8487-JGB(Ex)

Q   What were they saying about the case that you were there and overheard the conversation about?

A   I don't recall.  I just know it was about the case.

Q   They were talking about it?

A   Yes.

Q   Were they talking about any particular product?

A   Any particular product?

Q   Well, you said Carmex, and I'm just wondering what -- trying to get the specifics, as best I can, on what the conversation was about when you said it was about Carmex. And so was it about a particular product from Carmex, or...

A   No.  It was just mainly about -- you know what, I'm not sure.

[. . .]

Q   And then so did you join in the conversation?

A   Yes.  And I told them I had purchased Carmex before, and I heard about what they were doing, or whatever, and about the bottom of the jars.  And she told me contact Caleb [Marker].

(Davidson Decl. Ex. A, Turcios Dep., Tr. 15:24-19:12.)

Mr. Turcios did not in fact contact RLO, or Mr. Marker.  Nonetheless, having had no communications about the case or underlying facts with the purported class representative, RLO filed its Complaint in September 2012.   The pleading lists Mr. Turcios as class representative and certifies contentions regarding his purported purchases, alleged deception, reliance, causation, and injury.  It was not until *six months* after a complaint was filed listing him as the putative class representative— and only *two days* before his March deposition—that Mr. Turcios first spoke to or met with his counsel:[4]

_____

[4] Apparently Mr. Turcios has met Mr. Marker once or twice at office parties that he attended because of his relationship with Mr. Marker's legal secretary, Marisa Acedo, but according to Mr. Turcios, the case was not discussed on those occasions.

7

CARMA LABS' MOTION FOR RULE 11 SANCTIONS
Case No. CV12-8487-JGB(Ex)

Q    [P]rior to filing this lawsuit, did you ever have any phone conversations with any lawyer at the firm that represents you today?

A   No.

Q   Never.

A   No.

Q   Did you ever meet in person with any of the lawyers that work for the law firm that represents you today?

A   Yes.

Q   When was that meeting or meetings?

A   A couple days ago.

Q   That's the first time you ever met with these lawyers?

A   Yes.

Q   And did you have any written correspondence with these lawyers at any time prior to filing the lawsuit?

A   Written correspondence?

Q   Yeah.   Any sort of e-mail, written correspondence, other than verbal correspondence with the lawyers.

A   No.

Q   None.

A   No.

Q   So you agreed to be the plaintiff in a class-action lawsuit that you filed, today, correct?

A   Yes.

Q   And you didn't communicate with any lawyers beforehand?

A   No.

---

(Davidson Decl. Ex. A, Tr. 28:21-30:4 ("we didn't talk about nothing that has to do with this, just what's up, like that."))  He has never spoken to any other attorneys at RLO.  (Davidson Decl. Ex. A, Tr. 30:11-13.)

8

CARMA LABS' MOTION FOR RULE 11 SANCTIONS
Case No. CV12-8487-JGB(Ex)

(Davidson Decl. Ex. A, Turcios Dep., Tr. 22:19-23:23.)

Similarly, Mr. Turcios did not review the Complaint or the Amended Complaint prior to filing—he never saw those pleadings until just days before his deposition:

Q: Did you ever look at the complaint that was filed on your behalf?

A: Yes.

Q: When was that?

A: A couple days ago.

Q: That was the first time?

A: Yeah.

(Davidson Decl. Ex. A, Tr. 23:24-24:5.)

Unsurprisingly, since RLO never met with Mr. Turcios to discuss the actual facts behind his purchases of Carmex, Mr. Turcios's deposition testimony repeatedly contradicts allegations and factual contentions in the complaint, with respect to the following critical issues:

**(a)  <u>Mr. Turcios Was Not Deceived By Carma Labs' Purportedly Deceptive Packaging of the Green Carmex Jar.</u>**

The Amended Complaint states that Mr. Turcios "mistakenly believed that the product Carmex filled the entire Carmex jar, when, in fact, it did not."  (FAC ¶ 4.) Mr. Turcios, however, testified that "you can just tell" from the product that the Green Carmex Jar is not filled:

> Q   How do you know there should be more than .25 ounces?
>
> A   ***You can tell right away when you see in that jar***.
>
> Q   When you've seen the jar – can you explain that further, what you mean. ***Are you saying that you can tell right away, when you look at the jar, that it should have more***?  Is that your point?
>
> A   ***Yeah***.
>
> [. . .]

Q: Have you done anything to verify whether Carmex is lying about giving people less than .25 ounces of product in the jars that you purchased?

A: No.

Q: Well, how do you know that's the case, then?

A: I don't know, **you can just tell**.

Q: How can you just tell?

A: **By the indention in the little jar**.

(Davidson Decl. Ex. A, Turcios Tr. 77:15-24; 84:5-12 (emphasis added).)

Thus, with respect to the Green Carmex Jar, it is clear that Mr. Turcios—unlike the putative class, and contrary to the allegations in the complaint—was well aware that the concave portion of the Green Carmex Jar was not filled with product.

**(b)** **Mr. Turcios Does Not Believe That He Has Received the 0.25 Ounces of Carmex As It Says on the Product Label.**

As noted, *supra*, the Amended Complaint does not dispute that both the Original and Green Carmex jars (referred to in the complaint as the ".25 ounce plastic jar") contain 0.25 ounces of product.  (*See, e.g.*, FAC ¶¶ 3, 30, 33, 34.)  However, Mr. Turcios testified **repeatedly** that he believes that the Green Carmex Jar does not contain 0.25 ounces of Carmex product:

Q   So what about the other jar you're talking about?

A   The .25 ounce?

Q   Yeah.  How much product do you think you're getting in that?

A   **Less than .25**.

Q   Okay.  **So you think you're getting less than the .25 ounces it says on the product**.

A   **Right**.

Q   Okay.

A   And that's because of the little indention on the bottom of the .25-ounce jar.

Q   Have you ever tried to check to see whether or not you're getting less than .25 ounces?

A   Never bothered to check.

Q   Never bothered. So at some point you came to the conclusion that you were getting less than the .25 ounces.  How do you come to that conclusion?

A   During that conversation, when I overheard Marissa and Elaine talking about it.

[. . .]

Q   Other than the indention, is there any other issues that you find problematic with the Carmex jars that you purchased?

A   No.  Just that they should give the people's money's worth.

Q   What money's worth are you talking about?

A   Whatever people spend on Carmex.

Q   *And that's because you think the jar contains less than .25 ounces*?

A   *Exactly*.

Q   Even though it says that on the jar?

A   Correct.

(Davidson Decl. Ex. A, Tr. 81:15-82:11; 83:11-22.)

Not only that, Mr. Turcios testified that *all he wanted* was the full 0.25 ounces he was promised, and that he "would be happy" with that promised (and provided) amount:

Q   But that's what you want, .25 ounces, correct?

A   Right.

Q    So if that's what you want and you in fact were getting that amount, would you be happy?

A    Yeah.

(Davidson Decl. Ex. A, Tr. 86:1-8.)

Mr. Turcios's counsel requested a break **immediately** following this disastrous testimony (*see* Davidson Decl. Ex. A, Tr. at 86:9 (Mr. Marker: "Let's take a break")), and as soon as he returned from a thirty minute lunch break Mr. Turcios attempted to correct his prior testimony:

Q   Are you asking for a refund in this case, sir?

A   No, no refund, just the right amount of product in the jar.

Q   You don't want a refund.

A   The right amount of product in the jar.

Q    And when you say "right amount," you mean .25 ounces, correct?

A   No, the other half of Carmex that's supposed to be in there.

Q   I thought you said .25 ounces is what you wanted.

A   I didn't know what the heck 2 point – or .25 ounces was.

Q   You don't know what .25 ounces means?

A   No, I didn't know what I was talking about earlier.

Q   Why not?

A   I was getting confused.

Q   And so now you're changing your testimony.

A   Yeah, to that.

Q   Why?

A   Because I got confused.

Q   Confused about what?

A   About all the questions you were asking me.

Q   About the amount of product you were getting?

A   Yeah.

Q   So you're not claiming that you got anything less than .25 ounces; is that what you're saying now?

A   Correct.

(Davidson Decl. Ex. A, Tr. 86:1-8.)

Mr. Marker's attempts to coach and correct his class representative's testimony are equal parts improper and unavailing.   Mr. Turcios clearly neither understands nor agrees with the class allegations regarding the Carmex jar.   His only concern—a concern existing only after a conversation with two RLO employees—is that he was not getting the amount of product that the jar advertised.   That concern contradicts the class allegations and is unfounded.   (Woelbing Decl. ¶¶ 3-4).

### (c)   <u>Mr. Turcios Does Not Find the "Thick Bottom" of the Original Carmex Jar Deceptive.</u>

The Amended Complaint alleges that the Original Carmex Jar (0.25 ounces) is misleading because of its "thick (aka false) bottom."   (FAC ¶ 16; *see also, e.g.*, *id.* ¶¶ 18 ("thick bottom"), 19 ("solid plastic bottom")).   Mr. Turcios, however, has no idea what the Original Jar is, or what his complaints are supposed to be regarding that jar. Thus, he testified as follows regarding his approximately 20 purchases of the Original Carmex Jar:

Q   [H]ave you ever seen a jar that didn't have the indention on it?

A   Yeah, the bigger Carmex jar.

Q   When you say "bigger," which jar are you referring to?

A   I'm not sure how much is in there.

Q   But bigger than the .25-ounce jar you bought?

1   A   Well, it's – yeah, it's way bigger than the .25-ounce jar, but

2   there's, like, the same amount in there as a .25 ounce.

3   Q   So which jar is that?

4   A   It's the one with the black and yellow writing on it.

5   Q   Black and yellow writing on it.

6   A   Right.  I think the letters – the letters say "Carmex" in black,

7   and the rest of the jar is yellow.

8   Q   And so that jar, to your understanding, is larger than the jar

9   you're complaining about?

10  A   Yeah.  It looks larger, but there's nothing in there.

11  Q   Yeah.  So I thought you said that you wanted the larger jar; am

12  I misunderstanding you?

13  A   Wanted a larger jar?

14  Q   Let's back up for a second.  I asked you whether or not – I

15  asked you, do you have any problem with the jar that has what you

16  claim is the indention in it, right?

17  A   Right.

18  Q   And I asked you whether or not you had a problem with any

19  other jar.  And what's your answer?

20  A   Yeah, there's a problem with both of those jars.

21  Q   Okay.  And so now I'm trying to get –

22  A   I got – sorry, go ahead.

23  Q   Go on.

24  A   I got mixed up.

25  Q   Okay.

26

27

28

A   The one with the bigger jar is the one with the plastic inside of it that, you know, it seems like there's more in there but there isn't, it's actually the same amount as in the .25 ounce.

Q   So wait, there's two jars you're referring to.

A   Right, the bigger one –

Q   The bigger one – and when you say "bigger," is it the .25-ounce jar?

A   The one that is bigger than the .25-ounce jar.

Q   Has more product in it?

A   Should have more product in it.

Q   So what jar – is it a jar that says anything other than .25 ounces on it?

A   I don't remember what –

Q   But it's bigger than the one that is –

A   Yeah.

Q   – compared to what?

A   It's a bigger oval than a little size .25-ounce jar.

[. . .]

Q   And so you're claiming there's a little jar and a big Carmex jar?

A   A little jar inside the big Carmex jar?

Q   No, I'm just using your words.  You said there's a little jar and there's a larger jar, so that makes me believe that you think there's two size jars.  Am I right?

A   Well, the bigger just has less product in it and it should have more.

(Davidson Decl. Ex. A, Tr. 78:23-81:14.)

Mr. Turcios's confused testimony contradicts the contentions in the complaint regarding the allegedly deceptive thick-bottomed Original Carmex Jar. There is no larger oval jar containing 0.25 ounces of Carmex and there never has been. (Woelbing Declaration ¶ 5).

**(d)** **Mr. Turcios Did Not Rely on Carma Labs' Allegedly Misleading Packaging in Making His Purchasing Decisions.**

The Amended Complaint alleges that Mr. Turcios made his decision to buy the 0.25 ounce jar of Carmex after examining the jar and evaluating the quantity of product he thought he was getting (FAC ¶¶ 3-5). Mr. Turcios testified, however, that he did not examine either the price or quantity in the Carmex jars before making his purchases. In his own words, he "just picked it [the Carmex Jar] up and bought it," without regards to price or volume (*id.* at Tr. 36:1):

> Q: Of all the purchases we're talking about of the 0.25-ounce jar that you made, from 2006 to present, did you ever read any of the information on the product that you purchased?
>
> A: No.
>
> [. . .]
>
> Q: And out of all the purchases you made of the Carmex jar, from 2006 to present, you don't remember the price you paid?
>
> A: No, I don't.
>
> ***Q: And am I correct, out of all the purchases of the Carmex 0.25-ounce jar you made from 2006 to present, you never inspected the jar?***
>
> ***A: No.***

(Davidson Decl. Ex. A, Tr. 68:24-69:14.)

---

CARMA LABS' MOTION FOR RULE 11 SANCTIONS
Case No. CV12-8487-JGB(Ex)

**(e)**     **The Allegedly Misleading Packaging Was Not the "But For" Cause of Mr. Turcios's Carmex Purchases.**

The Amended Complaint's alleges that Mr. Turcios "would not have purchased Carmex but for Defendants' misleading packaging of the product" (FAC ¶ 59, *see also id.* ¶ 5). However, Mr. Turcios testified that *he would in fact **buy the product again***:

> Q: Do you still use Carmex today?
>
> A: I would.
>
> Q: You would still use it?
>
> A: Yes.

(*Id.* Tr. 71:7-10.)

Indeed, the only reason Mr. Turcios does not currently own Carmex is that he "just [doesn't] have chapped lips." (*Id.* Tr. 72:11.) That is because Mr. Turcios—contrary to the representations in the complaint—purchased Carmex not because of the price or quantity, but because it "work[s]" (*id.* at Tr. 78:19), it is a "good product" (*id.* at Tr. 85:6), it is "the best quality" (*id.* at Tr. 78:2), and his "favorite choice of lip balm" (*id.* at Tr. 44:24).

**(f)**     **Mr. Turcios's First Purchase of the Original Carmex Jar was Made Outside the Limitations Period.**

The Amended Complaint states that Mr. Turcios's purchases were made "during the Class Period"; in other words, within the relevant limitations period (four years, or September 2008). (FAC ¶¶ 3, 30.) Contrary to these certified representations, Mr. Turcios testified that his first purchase of the Original Carmex Jar was made in 2006 or 2007—outside the limitations period. (Davidson Decl. Ex. A, Tr. 30:14-31:17.)

\\

\\

\\

(g)     **Mr. Turcios Does Not Share a Common Interest With the Putative**
**Class.**

The Amended Complaint states that Mr. Turcios shares a common interest with the putative class with respect to the redress of injury, that Mr. Turcios has no interests contrary to the class, and that he will fairly and adequately protect the class's interests. (FAC ¶ 35.)  Again, Mr. Turcios's testimony refutes these allegations.  The class seeks redress of injunctive relief, restitution, disgorgement, and actual damages (FAC § VIII).  Unlike the class, Mr. Turcios is not interested in a refund; he seeks only "the right amount of product in the jar":

> Q: Are you asking for a refund in this case, sir?
>
> A: No, no refund, just the right amount of product in the jar.

(Davidson Decl. Ex. A, Tr. 88:23-25.)

## III.   ARGUMENT

This is quintessential cart-before-the-horse litigation.  In their race to the courthouse, RLO ignored the critical element of a class action—an aggrieved plaintiff. RLO not only constructed this lawsuit on its own, it *filed* the lawsuit without ever speaking with the putative representative to ensure that his facts matched the allegations attributed to him.[5]  And, as it turns out, they did not.  Federal Rule of Civil Procedure 11 ("Rule 11") prohibits and sanctions such conduct.

Rule 11 imposes an affirmative duty on a signing party, here, RLO, "to certify by their signature that (1) they have read the pleadings or motions they file and (2) the pleading or motion is 'well-grounded in fact,' has a colorable basis in law, and is not filed for an improper purpose." *Copple v. Astrella & Rice, P.C.*, 442 F. Supp. 2d 829, 837 (N.D. Cal. 2006); *see also Business Guides, Inc. v. Chromatic Comms. Enters.,*

---

[5] Indeed, it is clear from the complaint that it was drafted before RLO knew whether the class representative would be male or female, and that it was not updated when the stand in plaintiff was found. (*See, e.g.*, FAC ¶ 59.)  RLO has been criticized for "boiler plate" filings in the past.  *See Rothman v. Gen. Nutrition Corp., et al.*, No. CV 11–03617 SJO (RZx), 2011 WL 6940490, at *7 (C.D. Cal. Nov. 17, 2011).

*Inc.*, 498 U.S. 533, 551 (1991) (Rule 11 obligates signing attorney "to conduct a reasonable inquiry into the facts and the law before filing.")  Rule 11's "reasonable inquiry" requires attorneys to seek credible information rather than proceed on mere suspicions or supposition.  *Islamic Shura Council of S. California v. F.B.I.*, 278 F.R.D. 538, 543 (C.D. Cal. 2011).  Where a pleading is frivolous—*i.e.*, "baseless and made without a reasonable and competent inquiry"—an improper purpose can be deduced.  *Townsend v. Holman Consulting Corp.*, 929 F.2d 1358, 1362 (9th Cir. 1990); *In re Keegan Mgmt. Co. Securities Litig.*, 78 F.3d 431, 434 (9th Cir. 1996).  If Rule 11 is violated, imposition of sanctions is mandatory.  *Huettig & Schromm, Inc. v. The Landscape Contractors Counsel*, 790 F.2d 1421, 1426 (9th Cir. 1986).  Here, an award of attorneys' fees, and dismissal with prejudice of the Amended Complaint are merited under the circumstances.

### A.   RLO's Nonexistent Inquiry Into The Factual Allegations Is Objectively Unreasonable.

If Rule 11's "reasonable inquiry" requirement means anything at all, it must mean, at a minimum, *some* inquiry.  Here, RLO constructed and filed the complaints without **any** inquiry at all.  RLO drafted, served, and filed the original and amended complaint in this action *without ever speaking to the class representative they purported to represent.*  Those pleadings, which purport to set out *Mr. Turcios's* factual contentions and allegations on behalf of a statewide class, but which in fact present nothing other than *RLO's* own allegations, are frivolous, were presented for an improper purpose, and are without evidentiary support.  Fed. R. Civ. P. 11(b).  Such conduct "subject[s] the author to sanctions."  *In re Kunsler*, 914 F.2d 505, 516 (4th Cir. 1990) (Rule 11 sanctions appropriate where "a complaint contain[s] allegations unsupported by any information obtained prior to filing, or allegations based on information which minimal factual inquiry would disprove.").

Eager to bring suit against Carma Labs, RLO drafted, served, and filed a lawsuit in the name of an individual they had never spoken to, whose factual contentions they did not understand, and whose personal understanding and belief directly contradict the class he purports to represent.  Rule 11 sanctions are warranted where plaintiff's counsel merely relied on his/her client's representations and conducted no further inquiry.  *See, e.g., Anderson v. Cnty. Of Montgomery*, 111 F.3d 494 (7th Cir. 1997); *Coburn Optical Indus., Inc. v. Cilco, Inc.*, 610 F. Supp. 656 (M.D.N.C. 1985).  Here, RLO's conduct is far more egregious—they did not even consult Mr. Turcios before filing a complaint naming him as class representative and making (baseless) allegations regarding his factual conduct and state of mind.[6]

## B.     The Complaint and Amended Complaint Were Filed for an Improper Purpose.

This is unquestionably a lawyer-constructed case.  Mr. Turcios's deposition testimony shows that Mr. Turcios never had a complaint, concern, or problem with Carma Labs' products until he overheard a conversation between his girlfriend and her mother, RLO employees.   It is also apparent that RLO filed the lawsuit without regards to Mr. Turcios's own concerns, or the facts and his beliefs underlying his purchases.  In other words, Plaintiff's counsel sought to start its own legal battle against Carma Labs, needed a client to start a class action lawsuit, and, so, manufactured a problem to litigate and then went in search of a stand in plaintiff.  Such lawyer-driven client solicitation "is improper[.]"  *Meachum v. Outdoor World*

---

[6] Counsel's pre-suit inquiry was equally unreasonable with respect to its certification of the allegation that class adjudication is superior to any other form of resolution because it will "conserve judicial resources," and because "[g]iven the amount of the individual Class members' claims, few, if any, Class members could or would afford to seek legal redress individually for the wrongs complained of herein."  (FAC ¶ 37.)  Carmex offers a full refund of the purchase price to any dissatisfied consumer, without any need to resort to legal redress or conserve judicial resources.  (Woelbing Decl. ¶ 11.)   Every member of the putative class who is dissatisfied with Carma Labs' packaging can obtain a full refund, without cost to them, at any time.

CARMA LABS' MOTION FOR RULE 11 SANCTIONS
Case No. CV12-8487-JGB(Ex)

1 *Corp.*, 171 Misc. 2d 354, 369 (N.Y. Supp. 1996); *Bodner v. Oreck Direct, LLC*, No. C
2 06-4756, 2007 WL 1223777, at *3 (N.D. Cal. April 25, 2007).[7]

3     Courts have criticized lawyer-driven "stand in" plaintiffs as improper. *See*
4 *Bodner*, 2007 WL 1223777, at *3.[8] In *Bodner*, the plaintiff acknowledged that he
5 became a plaintiff by responding to a solicitation by the law firm; the plaintiff met the
6 attorney for the first time just prior to the plaintiff's deposition; the plaintiff did not
7 read the complaint before it was filed; and virtually all of the plaintiff's knowledge
8 regarding the suit came from his attorneys. *Bodner*, 2007 WL 1223777, at *1. Judge
9 Patel found that the plaintiff's counsel, not the plaintiff, was the driving force behind
10 the action, denied class certification, and stated: "the conduct in this action does not
11 look good, does not sound good, and does not smell good. In fact, it reeks." *Id.* at *3.
12 The court further found that the plaintiff's counsel's litigation practices were
13 "abhorrent and inconsistent with the standards of federal class action suits." *Id.*
14 RLO's desire to sue Carma Labs, with or without a plaintiff, smells no better, is no
15 less an abuse of the legal system, and is equally abhorrent.

16     **C.**     **The Contentions in the Complaint Have No Basis In Fact.**

17     Finally, RLO certified the complaints in this action, where the factual
18 contentions in those pleadings—including the contentions regarding Mr. Turcios's
19 alleged deception and reliance on the purportedly misleading packaging, perception of
20 the amount of product in the jar, his problems regarding the product, causation,
21

22 _____
[7] *See also Lai v. Anthony*, Civ. Nos. 88–00565MP, 90–00828 DAE, 1991 WL 208443,
23 at *5-6 (D. Hawaii July 5, 1991) (plaintiff's lawyer's conduct was not improper where
she contacted class representative only after being informed by estate trustee that the
24 representative was seeking counsel; however, "It should be noted, however, that the
judges of this court will void representation as called for under the circumstances
25 where genuine ethical issues arise as a result of improper attorney or trustee
solicitation.").
26 [8] *See also In re Cooper Companies Inc. Securities Litigation*, 254 F.R.D. 628, 637
27 (C.D.Cal. 2009) ("The class representatives in this case do not have the troubling traits
that suggest this is lawyer-driven litigation by a manufactured plaintiff"); *Weisman v.*
28 *Darneille*, 78 F.R.D. 669, 671 (S.D.N.Y. 1978).

CARMA LABS' MOTION FOR RULE 11 SANCTIONS
Case No. CV12-8487-JGB(Ex)

alleged damages, and his adequacy as a class representative—have no factual basis and were directly contradicted by Mr. Turcios's own testimony under oath.

Thus, Mr. Turcios, contrary to the certified representations in the complaints, understood at the point of sale that the Green Carmex Jar was not filled all the way, and knew "right away" that it had an indentation at the bottom, but continued to purchase the product time and time again (upwards of five times since Carmex changed the jar).   (Davidson Decl. Ex. A, Turcios Tr. 77:15-24; 84:5-12). With respect to the Original Carmex Jar, Mr. Turcios was unable to articulate his complaint, and testified vaguely about a "bigger jar" that is not the subject of the allegations in the complaint.   (*Id.*, Tr. 78:23-81:14).   Mr. Turcios appears to have no concerns about the iconic "thick bottom[ed]" jar that was in production from 1937 through 2010, and which Mr. Turcios purchased (without complaint) approximately 15 times before 2010.  Moreover, Mr. Turcios, unlike the class he purports to represent and contrary to the certified allegations in the Amended Complaint, believes that the Carmex jar does *not* contain 0.25 ounces of product that it is labeled as containing, and he would be "happy" if only he received the promised (and provided) 0.25 ounces. (Id. at Tr. 81:15-82:11; 83:11-22; 86:1-8). Similarly, Mr. Turcios—contrary to the allegations in the Amended Complaint—would continue to use Carmex today, *notwithstanding* the purported misleading packaging.  (*Id.*, Tr. 71:7-10.)   That is because, contrary to the baseless contentions in the complaints, Mr. Turcios did not purchase Carmex based on the price, the perceived volume of product in the jar, or the purportedly misleading packaging: he purchased Carmex because it is his "favorite choice of lip balm"—it "work[s]," it is a "good product," and it is "the best quality."  (*Id.*, Tr. 44:24;78:2; 85:6.)   Mr. Turcios, unlike the volume-discriminating consumer described in the complaints, never once looked at the price or volume on the jars of Carmex he purchased (or any other information on the jar).  He "just picked it [the Carmex Jar]

up and bought it."   (*Id.*, Tr. 36:1.)   All contrary allegations in the complaints are baseless and false, and were certified by RLO without any reasonable foundation.

The Amended Complaint's allegations regarding Mr. Turcios's adequacy as a class representative similarly lack evidentiary support.  Unlike the class allegations in the complaint, Mr. Turcios does not seek a refund.  He just wants "the right amount of product"—*i.e.*, the 0.25 ounces he already received.[9]  RLO's certified contention that Mr. Turcios's interests are aligned with the class is baseless.

Finally, it is clear from Mr. Turcios's own testimony that he first purchased the Original Carmex Jar outside of the relevant limitations period.[10]  His first purchase was in "'06, '07," and from the time of his first purchase Mr. Turcios was well aware of the shape of the Original Carmex Jar.[11] (Davidson Decl. Ex. A, Tr. 30:14-31:17).  Thus, Mr. Turcios lacks standing to assert claims regarding the Original Carmex Jar, a fact that any minimal investigation would have revealed.  *See Blackwell v. SkyWest Airlines, Inc.*, 245 F.R.D. 453, 462–63 (S.D.Cal. 2007).   Counsel's certified representations to the contrary violate Rule 11.  *Thompson v. RelationServe Media, Inc.*, 610 F.3d 628, 669 (11th Cir. 2010) ("[if] a statute of limitations clearly bars a claim,  and the record makes clear that the attorney had ample time for pre-filing research, a district court could only conclude that Rule 11 has been violated").

\\

\\

---

[9]  Indeed, Mr. Turcios himself was unaware of the responsibilities associated with being a class representative, testifying when asked what a class representative is that he "couldn't remember the word" and that he would owe duties to the class only if it "comes down to it."  (Davidson Decl. Ex. A, Tr. 100:16-101:11.)

[10]  The relevant limitations period is four years for the UCL claim and three years for the FAL and CLRA claims.  *See* Cal. Bus. & Prof. Code § 17208*;* Cal. Civ. Code § 1783; Cal. Code Civ. P. § 338(a); *Cnty. of Fresno v. Lehman*, 229 Cal.App.3d 340, 346, 280 Cal.Rptr. 310 (1991).

[11]  At a minimum, Mr. Turcios was aware of the interior dimensions of the Original Carmex Jar at the time he finished the jar, which he testified "wasn't that long" after his purchase of the product.  (Davidson Decl. Ex. A, Tr. 42:7-19.)

23

CARMA LABS' MOTION FOR RULE 11 SANCTIONS
Case No. CV12-8487-JGB(Ex)

**IV.** **CONCLUSION**

For the reasons listed above, Carma Labs seeks dismissal of the captioned action with prejudice, and monetary sanctions to compensate Carma Labs for having to defend against this frivolous lawsuit.

K&L GATES LLP

Dated:  April 8, 2013                  By:  */s/ Rachel Davidson*
                                            Rachel R. Davidson
                                            Mikal J. Condon
                                            Attorneys for Defendant Carma Labs