UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL TURCIOS, on behalf of himself and all others similarly situated,<br><br>                    Plaintiff,<br><br>        v.<br><br>CARMA LABORATORIES, INC., a Wisconsin corporation,<br><br>                    Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. CV 12-8487-JGB (Ex)<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**<br><br>**[Motion filed May 3, 2013]** |

The Court has received and considered all papers filed in support of and in opposition to Plaintiff's Motion for Class Certification, as well as the arguments advanced by counsel at the July 1, 2013 hearing.  For the reasons discussed below, the Court DENIES Plaintiff's Motion for Class Certification.

1

# I.   BACKGROUND

## A.   Procedural Background

Plaintiff Michael Turcios filed his Complaint as a class action in the California Superior Court for the County of Los Angeles on September 6, 2012.  Defendant Carma Laboratories, Inc. ("Carma Labs") removed the action to this Court on October 3, 2012.  (See Not. of Removal, Ex. B, Doc. No. 1.)  On December 20, 2012, Plaintiff filed his First Amended Complaint ("FAC"), alleging claims for: (1) violation of the False Advertising Laws ("FAL"), Bus. & Prof. Code § 17500 *et seq.*; (2) violation of California's Unfair Competition Laws ("UCL"), Bus. & Prof. Code § 17200 *et seq.*; and (3) violation of California's Consumer Legal Remedies Act ("CLRA"), Civil Code § 1750 *et seq.*  (FAC, Doc. No. 32.)

On April 8, 2013, Defendant filed a Motion for Sanctions under Federal Rule of Civil Procedure 11. (Doc. No. 41.)  Plaintiff opposed the Motion for Sanctions on April 19, 2013 (Doc. No. 46), and Defendant replied on April 26, 2013 (Doc. No. 47). This Court denied Defendant's Motion for Sanctions on May 2, 2013.  (Doc. No. 52.)

On May 3, 2013, Plaintiff filed a Motion to Certify Class ("Motion," Doc. No. 56), attaching the

2

Declaration of Christopher P. Ridout ("Ridout Decl.,"
Doc. No. 57).  In his Motion, Plaintiff invokes Federal
Rule of Civil Procedure 23(a) and 23(b)(3), and asks
the Court to certify a class for his UCL and CLRA
claims,[1] composed of:

> All persons residing in California who purchased
> Defendant's product Carmex in a 0.25 oz. plastic
> jar at a location in California at any time during
> the Class Period.

(Mot. at 10.)

Defendant opposed the Motion on June 3, 2013 (Doc.
No. 60), attaching the Declaration of Rachel R.
Davidson ("Davidson Decl.," Doc. No. 60-1) and the
Declaration of Paul Woelbing ("Woelbing Decl.," Doc.
No. 60-3).  Plaintiff replied on June 17, 2013 (Doc.
No. 66), attaching the Declaration of Bradley C. Buhrow
("Buhrow Decl.," Doc. No. 66-1).

On July 8, 2013, the Parties filed supplemental
briefing on the Motion, per the Court's July 1, 2013
order.  (Doc. Nos. 69, 71.)

**B.   Plaintiff's Allegations**

Plaintiff alleges that prior to September 2010,
Carmex packaged and distributed .25 oz. plastic jars of

_____
[1] Plaintiff does not attempt to certify a class
based on his FAL claim.

Carmex lip balm in packaging that contains a false bottom, deceptive covering, and/or nonfunctional slack fill. (FAC ¶¶ 2, 16.) The jar had a thick bottom, and the total plastic comprised more than seventy percent of the jar ("Original Carmex Jar"). (Id. ¶¶ 16, 18.) After September 2010, Defendants eliminated the thick bottom of the jar by creating a concave bottom, but packaged the product using a cardboard backing or opaque sticker, which prevented the consumer from viewing the hollow space at the point of sale ("Green Carmex Jar"). (Id. ¶¶ 18-20, 40.) The standard packaging concealed that the bottom of the Green Carmex Jar is hollow, comprising 36% of the overall volume of the jar. (Id. ¶ 22.) Additionally, both Carmex jars contain forty percent less product than the Original Carmex Tube, which appears smaller because the total container volume is less, but sells for the same price. (Id. ¶ 25.)

Plaintiff purchased this product, before and after September 2010, believing that the entire Carmex jar was filled. (Id. ¶¶ 3-4, 26.) Plaintiff alleges that he would not have paid the price he paid for it had he known that the entire Carmex jar was not filled. (Id. at ¶ 5.)

4

1

2

## II. LEGAL STANDARD[2]

3

4     Federal Rule of Civil Procedure 23 governs class

5 actions.  Fed. R. Civ. P. 23.  A party seeking class

6 certification must demonstrate the following

7 prerequisites: "(1) numerosity of plaintiffs; (2)

8 common questions of law or fact predominate; (3) the

named plaintiff's claims and defenses are typical; and

9 (4) the named plaintiff can adequately protect the

10 interests of the class."  Hanon v. Dataproducts Corp.,

11 976 F.2d 497, 508 (9th Cir. 1992) (citing Fed. R. Civ.

12 P. 23(a)).  The party may not rest on mere allegations,

13 but must provide facts to satisfy these requirements.

14 Doninger v. Pac. Northwest Bell, Inc., 564 F.2d 1304,

15 1309 (9th Cir. 1977) (citing Gillibeau v. City of

16 Richmond, 417 F.2d 426, 432 (9th Cir. 1969)).

17     In addition to these prerequisites, a plaintiff

18 must satisfy one of the three categories set out in

19 Rule 23(b) in order to maintain a class action.  Where,

20 as here, a plaintiff moves for class certification

21 under Rule 23(b)(3), a class must satisfy two

22 conditions: (1) "the questions of law or fact common to

23 class members predominate over any questions affecting

24 only individual members" and (2) "a class action is

25

26     [2] Unless otherwise noted, all references to "Rule"
refer to the Federal Rules of Civil Procedure.

27

28                              5

superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).  The party seeking class certification bears the burden of demonstrating that it has met each of the four requirements of Rule 23(a) and at least one of the Rule 23(b) requirements.  <u>Zinser v. Accufix Research Inst.</u>, 253 F.3d 1180, 1186 (9th Cir. 2001). To meet its burden, the moving party "'must provide facts to satisfy these requirements; simply repeating the language of the rules . . . is insufficient.'"  <u>In re Paxil Litig.</u>, 212 F.R.D. 539, 543 (C.D. Cal. 2003) (quoting Bates v. United Parcel Serv., 204 F.R.D. 440, 443 (N.D. Cal. 2001)) (ellipsis in original).

"The decision to grant or deny a motion for class certification is within the trial court's discretion." <u>Bateman v. American Multi-Cinema, Inc.</u>, 623 F.3d 708, 712 (9th Cir. 2010).  A class certification motion requires a district court to conduct a "rigorous analysis" that frequently "will entail some overlap with the merits of the plaintiff's underlying claim. <u>Wall-Mart Stores, Inc., v. Dukes</u>, 131 S.Ct. 2541, 2550 (2011).  However, neither "the possibility that a plaintiff will be unable to prove his allegations, nor the possibility that the later course of the suit might unforeseeably prove the original decision to certify the class wrong, is a basis for declining to certify a

class which apparently satisfies [Rule 23]." <u>United
Steel Workers v. ConocoPhillips Co.</u>, 593 F.3d 802, 809
(9th Cir. 2010).

### III. DISCUSSION

**A.  Standing**

Standing is a threshold issue that should be
resolved before class certification. <u>Lierboe v. State
Farm Mut. Auto. Ins. Co.</u>, 350 F.3d 1018, 1022 (9th Cir.
2003) ("[S]tanding is the threshold issue in any suit.
If the individual plaintiff lacks standing, the court
need never reach the class action issue.")(quoting 3
Herbert B. Newberg on Class Actions § 3:19, at 400 (4th
ed. 2002); <u>LaDuke v. Nelson</u>, 762 F.2d 1318, 1325
("Standing, however, is a jurisdictional element that
must be satisfied prior to class certification."));
<u>Bristow v. Lycoming Engines</u>, 2008 WL 850306, at *7
(E.D. Cal. March 28, 2008) ("If a proposed class member
has not in fact suffered damages, class certification
is improper under the UCL and CLRA.").

Defendant argues that Plaintiff lacks standing
because he cannot show he relied on any
misrepresentation or causation when making his Carmex
jar purchases since he testified that: he never looked
at the price or volume, he knew the actual volume of

7

the product before the statutory period, and he knew
that the jar had an indentation, but continued
purchasing Carmex in the packaging at issue because he
enjoyed the product. (Opp. at 18-19.) Plaintiff
argues that 1) his UCL claim does not require proof of
reliance and 2) he meets the standing requirement for
his CLRA claim because he testified that he relied on
Defendant's misrepresentation when he purchased his
Carmex. (Pl. Supp. Br. at 1.)

CLRA Standing

California's CLRA prohibits "unfair methods of
competition and unfair or deceptive acts or practices."
Cal. Civ. Code § 1770(a). A consumer who suffers
damage as a result of another's use of a practice
declared to be unlawful by CLRA can bring an action for
relief. Cal Civ. Code § 1780. The statute requires
that "'plaintiffs in a CLRA action show not only that a
defendant's conduct was deceptive but that the
deception caused them harm.'" In re Vioxx Class Cases,
180 Cal. App. 4th 116, 126 (2009); see also Webb v.
Carter's Inc., 272 F.R.D. 489, 501 (C.D. Cal. 2011).

In his supplemental brief, Plaintiff acknowledges
that his CLRA claim requires proof of reliance. (Pl.
Supp. Br. at 1.) To support that he relied on

8

Defendant's alleged misleading conduct in making his Carmex purchases, Plaintiff points to his testimony that he believed the Carmex jars were full until 2012, when he discovered that the jar had an indent in the bottom. (Reply at 12.) This does not demonstrate that Plaintiff relied on the external volume of the jar when he purchased the lip balm, particularly taken in context with the rest of his testimony. Plaintiff testified that he had no expectation about how much product he was getting when he first purchased the lip balm in 2006, he knew he was getting .25 ounces before he purchased the product, he was satisfied with the product and did not have any concerns or complaints after he finished his first and second .25 ounce jars, he continued to purchase the Carmex .25 ounce jars without reading the information on or inspecting the jar, he had no expectation of how much product he was getting, he did not put any thought into what price was reasonable, and he would still use Carmex today if he needed it. (Ridout Decl., Ex. D at 38:2-8; 44:4-7; 44:22-45:4; 50:15-21; 56:8-25; 58:9-15; 59:13-17; 65:20-22; 68:8-23; 69:11-14; 71:7-22; 90:2-15.)

UCL Standing

     Plaintiff seeks to certify class claims arising
from the UCL's unlawful prong, predicated on a
violation of the CLRA and Fair Packaging and Labeling
Act ("FPLA").  (Mot. at 7.)  In 2004, Proposition 64
amended the UCL to limit standing to those who have
suffered "injury in fact and have lost money or
property as a result of such unfair competition."
Californians for Disability Rights v. Mervyn's, LLC, 39
Cal. 4th 223, 227 (2006).  There must be a nexus
between the alleged unfair competition and a
plaintiff's alleged injury.  Hall v. Time, 158 Cal.
App. 4th 847, 849 (2008) ("[T]he phrase 'as a result
of' in the UCL imposes a causation requirement; that
is, the alleged unfair competition must have caused the
plaintiff to lose money or property."); Daro v.
Superior Court, 151 Cal. App. 4th 1079, 1099 (2007)
("When a UCL action is based on an unlawful business
practice . . . . there must be a causal connection
between the harm suffered and the unlawful business
activity.  That causal connection is broken when a
complaining party would suffer the same harm whether or
not a defendant complied with the law.").
     If the predicate statute is based on
misrepresentation, the plaintiff must show reliance in

10

order to have UCL standing.  <u>Durell v. Sharp Healthcare</u>,
183 Cal. App. 4th 1350, 1363(2010).  ("[I]n light of
Proposition 64's intention to limit private enforcement
actions under the UCL, we conclude the reasoning of
Tobacco II applies equally to the 'unlawful' prong of
the UCL when, as here, the predicate unlawfulness is
misrepresentation and deception.")  The CLRA prohibits
deceptive practices.  Therefore, Plaintiff is required
to show reliance to have standing to bring a UCL claim
based on the CLRA.  <u>See</u> <u>Bronson v. Johnson & Johnson,</u>
<u>Inc.</u>, 2013 WL 1629191, at *2 (N.D. Cal. April 16,
2013).  As discussed above, Plaintiff has not shown
that he relied on any allegedly deceptive practices
when making his Carmex purchases.

Citing to <u>Galvan v. KDI Distribution Inc.</u>, No. 8-
999, 2011 WL 5116585 (C.D. Cal. Oct. 25, 2011),
Plaintiff seems to assert that he has UCL standing
because a violation of the FPLA constitutes a UCL
violation that does not require proof of reliance.
(<u>Id.</u> At 7-8, Pl. Supp. Br. at 3-8.)  Plaintiff is
correct that UCL actions not based on a fraud theory do
not require actual reliance.  <u>In re Tobacco II</u>, 46 Cal.
4th 298, 326 (2009).  "In those actions, the plaintiff
must simply show that the alleged violation caused or
resulted in the loss of money or property."  <u>Medrazo v.</u>

11

<u>Honda of North Hollywood</u>, 205 Cal. App. 4th 1, 12 (2012).

The Court is not aware of any authority that supports the proposition that a violation of the FPLA creates automatic UCL standing for an individual plaintiff. A plaintiff asserting a UCL claim based on the FPLA must still show that the alleged violation caused or resulted in the loss of money or property. <u>Medrazo</u>, 205 Cal. App. at 12; <u>see also</u> <u>Peterson v. Cellco P'ship</u>, 164 Cal. App. 4th 1583, 1590 (2008) (finding that the trial court properly sustained the defendant's demurrer because plaintiffs lacked standing under section 17204, even where the plaintiffs claimed that the a violation of the Insurance Code gives rise to a cause of action for the UCL).

Plaintiff has not presented any evidence that his alleged economic injury occurred as a result of Defendant's alleged violation of the FPLA. Plaintiff testified that he started purchasing Carmex, without comparing it to other products, because he heard it was a good product. Additionally, he testified that he did not inspect the Carmex jar prior to his subsequent purchases and does not provide any reason other than his chapped lips and the quality of the product for those subsequent purchases. (Ridout Decl., Ex. D at 39:5-40:19, 42:1-3, 57:20-58:1, 63:8-12; 65:20-22.)

12

"In a class action, the plaintiff class bears the burden of showing that Article III standing exists." Ellis v. Costco Wholesale Corp., 657 F.3d 970, 979 (9th Cir. 2011).  Therefore, as the evidence before the Court demonstrates that Plaintiff has not met the necessary reliance and causation requirements, the Court finds that Plaintiff has not demonstrated that he has standing to bring his CLRA or UCL claims on behalf of the class.[3]

**B.  Ascertainability**

"In addition to the explicit requirements of Rule 23, an implied prerequisite to class certification is that the class must be sufficiently definite; the party seeking certification must demonstrate that an identifiable and ascertainable class exists."  Xavier v. Philip Morris USA Inc., 787 F. Supp. 2d 1075, 1089 (N.D. Cal. 2011); see also Thomas & Thomas Rodmakers, Inc. v. Newport Adhesives & Composites, Inc., 209 F.R.D. 159, 163 (C.D. Cal. 2002) ("Once an ascertainable and identifiable class has been defined, plaintiffs must show that they meet the four requirements of Rule 23(a), and the two requirements of

---

[3] The Court does not express an opinion as to whether this evidence would be sufficient to withstand a motion for summary judgment.

13

Rule 23(b)(3)."). "Courts have held that the class must be adequately defined and clearly ascertainable before a class action may proceed." Schwartz v. Upper Deck Co., 183 F.R.D. 672, 679-80 (S.D. Cal. 1999). The class definition must allow future courts to determine who was and was not bound by the judgment. Deitz v. Comcast Corp., No. 06-06352, 2007 WL 2015440, at *8 (N.D. Cal. July 11, 2007).

Defendant argues that Plaintiff's proposed class is not ascertainable because it is not sufficiently definite and there is no feasible method of proving membership the Court cannot identify the California residents who purchased the product, and the frequency with which they purchased the product. (Opp. at 11-13.) Additionally, Defendant argues that the class is unascertainable because it is overbroad, including Carmex purchasers who were not deceived by the alleged misrepresentation or suffered no damages. (Id. at 14.)

Plaintiff contends that the class is sufficiently ascertainable because "all that this required at this stage to meet the ascertainability requirement is that the class be defined in objective terms." (Reply at 3-4.)

The Court agrees with Defendant that the proposed class is not sufficiently ascertainable because it is overbroad. Defendant has presented evidence of its

14

full refund policy.  (See Woelbing Decl., Ex. F, Ex. G.)  At a minimum, the proposed class is overbroad because it would include consumers who already received refunds and, therefore, have not suffered any damages. See Stearns v. Select Comfort Retail Corp., 763 F. Supp. 2d 1128, 1152 (N.D. Cal. 2010).

"A lack of ascertainability alone will general not scuttle class certification." Red v. Kraft Foods, 2012 WL 8019257, at *6 (C.D. Cal. April 12, 2012).  Thus, although the Court is inclined to deny class certification on this basis alone, the Court assesses whether the Rule 23 factors have been met.

**C.   Federal Rule of Civil Procedure 23(a)**

**1.   Numerosity**

In determining whether under Rule 23(a)(1) joinder of all members is "impracticable," courts have held that the plaintiff need not show that it would be "impossible" to join every class member.  Haley v. Medtronic, Inc., 169 F.R.D. 643, 647 (C.D. Cal 1996). Additionally, there is no particular number cut-off, as the specific facts of each case may be examined. Ballard v. Equifax Check Servs., Inc., 186 F.R.D. 589, 594 (E.D. Cal. 1999).  Courts have not required evidence of specific class size or identity of class

15

members to satisfy the requirements of Rule 23(a)(4). *Robidoux v. Celani*, 987 F.2d 931, 935 (2d Cir. 1993).

Courts, additionally, have held that "[w]here the exact size of the class is unknown but general knowledge and common sense indicate that it is large, the numerosity requirement is satisfied." *Orantes-Hernandez v. Smith*, 542 F. Supp. 351, 370 (C.D. Cal. 1982). Courts have held that numerosity is satisfied when there are as few as 39 potential class members. *Patrick v. Marshall*, 460 F. Supp. 23, 26 (N.D. Cal. 1978).

Plaintiff argues that given the large Carmex sales numbers, "it is reasonable to assume that a sufficient amount of unique individuals purchased the Carmex jar in California to satisfy the numerosity requirement." (Mot. at 11-12.) Defendant does not contest numerosity. (Opp. at 11 fn. 5.)

Thus, the Court finds that the numerosity requirement is satisfied here.

### 2. Commonality

Courts have construed Rule 23(a)(2)'s commonality requirement permissively. *Staton v. Boeing Co.*, 327 F.3d 938, 953 (9th Cir. 2003). "All questions of fact and law need not be common to satisfy the rule. The existence of shared legal issues with divergent factual

16

predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." Id. (quoting Hanlon v. Chrysler Corp., 150 F.3d 1011, 1019 (9th Cir. 1998)); see also Haley, 169 F.R.D. at 648 ("[F]or the commonality requirement to be met, there must only be one single issue common to the proposed class.").

Plaintiff contends that the commonality requirement is satisfied because there are common issues, such as whether the Carmex jars violated the FPLA and UCL, and Defendant's defenses would be common to all class members. (Mot. at 12.) Plaintiff asserts that for claims based on the UCL's unlawful prong, a violation of the underlying law is a per se violation and a plaintiff does not need to prove actual reliance. (Id. at 7-8.) Additionally, Plaintiff asserts that the test for reliance for a CLRA claim is an objective standard and as long as a plaintiff can show that material misrepresentations were made, an inference of reliance arises for the entire class. (Reply at 5-6.)

Defendant argues that Plaintiff's proposed class does not meet the commonality requirement because both Plaintiff's CLRA and UCL claims require proof of reliance, and Plaintiff misconstrues the slack fill statute. (Opp. at 8-11.) Therefore, there is no common answer because: 1) there is no common

17

misrepresentation because the class includes those purchasers who understood the actual volume of the Carmex jar; 2) whether the Carmex jar's construction was material to each customer's purchasing decision is an individual inquiry; and 3) Plaintiff cannot show that all class members suffered the same injury because he cannot show that all class members relied on the alleged misrepresentation.  (Id. at 14-18.)

CLRA Claim

    Classwide causation for a CLRA claim may be established by materiality.  In re Vioxx Class Cases, 180 Cal. App. 4th at 129.  "If the trial court finds that material misrepresentations have been made to the entire class, an inference of reliance arises as to the class."  Id.  Under California law, a misrepresentation or omission is material "if a reasonable man would attach importance to its existence or nonexistence in determining his choice of action in the transaction in question . . . ."  Steroid Hormone Prod. Cases, 181 Cal. App. 4th 145, 157 (2010).  "If the misrepresentation or omission is not material as to all class members, the issue of reliance 'would vary from consumer to consumer' and the class should not be certified."  Stearns v. Ticketmaster Corp., 655 F.3d

18

1013, 1022-23 (9th Cir. 2011) (quoting <u>In re Vioxx</u>
<u>Class Cases</u>, 180 Cal. App. 4th 116, 129 (2009)).

Here, Defendant has put forth persuasive evidence
that materiality and reliance is an individualized
question, not appropriate for class certification.
Defendant presents evidence that consumers' behavior
varies even when there is a common awareness of the
alleged misrepresentation.  Defendant's evidence shows
that some consumers were aware of the particular
dimensions and design of the Carmex Green Jar, and
continued to purchase the lip balm.  (<u>See</u> Woelbing
Decl., Ex. D, Ex. K.)

Thus, the Court concludes that the elements of
reliance and materiality are not subject to common
proof and individual issues predominate with respect to
the CLRA claim.

<u>UCL Claim</u>

As discussed above, to prove a violation of the
CLRA, a plaintiff must show reliance, which is an
individualized inquiry in this case.  Thus the
commonality requirement is not met for Plaintiff's UCL
claim, to the extent it rests on a violation of the
CLRA.

19

Relying on <u>Hobby Industry Ass'n of Am., Inc. v.</u>
<u>Younger</u>, 101 Cal. App. 3d 358 (1980), Plaintiff argues
that the FPLA does not require reliance and, therefore,
he does not need to show reliance to succeed on a UCL
claim predicated on the FPLA.  In <u>Hobby Industry</u>, the
plaintiff sued the Attorney General for declaratory and
injunctive relief, alleging in that the Attorney
General had erroneously interpreted and applied certain
provisions of the FPLA.  The Court held that "section
12606 prohibits all such nonfunctional slack fill
packaging whether or not there is other proof of
deception or fraud," 101 Cal. App. 3d at 364, the Court
made no holding as to the elements required to bring a
private action predicated on the statute.

First, Defendant counters that Carmex's packaging
falls into one of the statutory exceptions to the
definition of nonfunctional slack fill enumerated in
Section 12606(b).  Specifically, Defendant argues that
the Carmex jar is filled to less than capacity because
of "[t]he requirements of the machines used for
enclosing the contents of the package." § 12606(b)(2).
(Opp. at 10-11.)  To support this argument, Defendant
provides evidence that the machinery used to package
the lip balm, which has been used for thirty years,
requires a heavier bottom, and a change in weight or
volume in product within the jars would require

20

Defendant to reengineer the filling system and lose the iconic shape of the Carmex jar.  (See Davidson Decl., Ex. B at 136:4-138:13; Ex. C at 25:24-27:11, 120:7-121:12, 125:25-130:13.)  Because the design of the Carmex jars falls into a statutory exception, deception or fraud, and a showing of reliance, are required. Thus, as reliance is an individualized inquiry here, the commonality requirement is not met for Plaintiff's UCL claim to the extent it is predicated on § 12606(b).

Second, Defendant argues that Hobby Industry's holding does not apply to the prohibition outlined in § 12606(a), which governs false bottoms.  Indeed, the Hobby Industry court understood the subsections to have different requirements, noting that § 12606(b), which prohibits nonfunctional slack fill, does not have a reference to deception and fraud.  101 Cal. App. 3d at 366.  The court specifically stated that "[t]he question whether the 'deception and fraud' language [in § 12606(a)] modifies the whole first sentence (i.e. including the false bottom, side and lid provision) or just the language 'otherwise so constructed or filled' has not been raised in the instant case."  Id. at 370 n. 4.  As the Court has not been adequately briefed on the issue of whether "deception and fraud" language modifies the whole first sentence, the Court declines to determine this question at this point, but finds

that common questions may exist to the extent the UCL claim is predicated on § 12606(a).

**3.  Typicality**

In order for a court to find typicality, "a class representative must be part of the class" and "possess the same interest and suffer the same injury" as the members of the class.  General Telephone Co. of Southwest v. Falcon, 457 U.S. 147, 157 (1982) (internal citations omitted).  To gauge typicality, a "court does not need to find that the claims of the purported class representative are identical to the claims of the other class members."  Haley, 169 F.R.D. at 649.  The Ninth Circuit elaborated on this standard, stating that "[u]nder the rule's permissive standards, representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical."  Hanlon, 150 F.3d at 1020; see also Armstrong v. Davis, 275 F.3d 849, 869 (9th Cir. 2001) ("[W]e do not insist that the named plaintiffs' injuries be identical with those of the other class members, only that the unnamed class members have injuries similar to those of the named plaintiffs and that the injuries result from the same, injurious course of conduct.") (citing Hanon v. Dataproducts Corp., 976 F.2d 497, 508 (9th Cir. 1992)).

22

Plaintiff asserts that his claims are typical of the putative class because he purchased each of the Carmex jars at issue on several occasions.  (Mot. at 13.)  Defendants argue that Plaintiff's claims are not typical because 1) he lacks standing and 2) he seeks the remedy of "more product" instead of the damages, injunction, and restitution sought by the class.  (Opp. at 19-20.)

As discussed above, Plaintiff has not demonstrated that he has standing to bring his CLRA and UCL claims, as there is no evidence before Court showing that he relied on the overall volume of the Carmex jars when purchasing the lip balm.  (See infra Section III.A.) "[T]ypicality may not be established unless the named representative has individual standing to raise the legal claims of the class."  Westways World Travel, Inc. v. AMR Corp., 218 F.R.D. 223, 235 (C.D. Cal. 2003).  Thus, the Court finds that the typicality requirement is not satisfied.

### 4.  Adequacy of Representation

Traditionally, courts have engaged in a two-part analysis to determine if the plaintiffs have met the requirements of Rule 23(a)(4).  First, the class representatives must not have interests antagonistic to the unnamed class members.  Lerwill v. Inflight Motion

23

<u>Pictures, Inc.</u>, 582 F.2d 507, 512 (9th Cir. 1978).
Second, the representatives must be able to prosecute
the action "vigorously through qualified counsel."  <u>Id.</u>
The adequacy requirement "serves to uncover conflicts
of interest between named parties and the class they
seek to represent."  <u>Amchem Products, Inc. v. Windsor</u>,
521 U.S. 591, 625 (1997) (citations omitted).

　　　Defendants argue that Plaintiff's claims are not
aligned with the putative class members' interests
because he: 1) does not have standing; 2) believes
himself to have been aggrieved by conduct different
than the putative class; 3) lacks sufficient
understanding of the class allegations and his
obligations as class representative; and 4) seeks a
refund that is less than the full refund available to
all putative class members.  (Opp. at 20-21.)

　　　As with the typicality requirement, the adequacy
requirement fails because Plaintiff has not
demonstrated standing for the majority of the claims
for which he seeks class certification.  <u>See In re Stec
Inc. Securities Litigation</u>, No. 09-1304, 2012 WL
6965372, at *6 (C.D. Cal March 7, 2012) ("Proposed
class representatives have a conflict of interest with
the absent putative class members if they do not have
standing to or refuse to assert certain claims that may

24

be available and advantageous to the absent putative class members.").

Additionally, the fact that Plaintiff only asks for a 36% refund, less than is available to putative class members, makes him an inadequate class representative. C.f. Western State Wholesale, Inc. v. Synthetic Industries, Inc., 206 F.R.D. 271, 277 (C.D. Cal. 2002) ("A class representative is not an adequate representative when the class representative abandons particular remedies to the detriment of the class.").

Thus, the adequacy of representation requirement has not been met here.

**D.   Federal Rule of Civil Procedure 23(b)(3)**

A plaintiff seeking to certify a class under Rule 23(b)(3) must show that questions of law or fact common to the members of the class "predominate over any questions affecting only individual members and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy."  Fed. R. Civ. P. 23(b)(3).

**1.   Predominance**

Rule 23(b)'s requirement that common issues of law or fact predominate over individual issues is similar to, but more stringent than, Rule 23(a)'s commonality

25

requirement.  In re Countrywide Financial Corp
Securities Litigation, 273 F.R.D. 586, 596 (C.D. Cal.
2009) (quoting Amchem Products, Inc. v. Windsor, 521
U.S. 591, 609 (1997)).  The focus in the predominance
inquiry is "whether proposed classes are sufficiently
cohesive to warrant adjudication by representation" and
"the relationship between the common and individual
issues."  In re Wells Fargo Home Mortg. Overtime Pay
Litigation, 571 F.3d 953, 957 (9th Cir. 2009)(quoting
Local Joint Executive Bd. of Culinary/Bartender Trust
Fund v. Law Vegas Sands, Inc., 244 F.3d 1152, 1162 (9th
Cir. 2001); Hanlon, 150 F.3d at 1022 (9th Cir. 1998)).

As discussed above, the circumstances here show
that a class-wide inference of reliance and causation
is not appropriate for the majority of Plaintiff's CLRA
and UCL claims.  (See infra Section III.C.2.)  Thus,
individual issues of reliance predominate for those
claims and the proposed class does not satisfy Rule
23(b)(3)'s predominance requirement.

**2.  Superiority**

The Court is unconvinced that a class action is
superior in this case.  First, Defendant already offers
consumers a full refund of the amount paid for the
product for any reason (see Woelbing Decl., Ex. F),

which is greater than the 36% refund sought by
Plaintiff.  The superiority requirement is not met
where "[i]t makes little sense to certify a class where
a class mechanism is unnecessary to afford the class
members redress."  In re Phenylpropanolamine (PPA)
Prods. Liab. Litig., 214 F.R.D. 614, 622 (W.D. Wash.
2003); see also Webb v. Carter's Inc., 272 F.R.D. 489,
504-505 (C.D. Cal. 2011).

Second, in assessing superiority, Courts may
consider "the likely difficulties in managing a class
action."  Fed. R. Civ. P. 23(b)(3)(D).  It must be
"administratively feasible to determine whether a
particular person is a class member."  See Chavez v.
Blue Sky Natural Bev. Co., 268 F.R.D. 365, 376 (N.D.
Cal. 2010).  In Hodes v. Van's Int'l Foods, No. 09-
1530, 2009 WL 2424214, at *4, the court found that the
case was unmanageable under 23(b)(3) because of the
number of class members and likelihood of
identification.  The court expressed concerns "about
how Plaintiffs will identify each class member and
prove which brand of Van's frozen waffles each member
purchased, in what quantity, and for what purpose.  The
likelihood that tens of thousands of class members
saved their receipts as proof of their purchase of
Van's waffles is very low."  Id.; see also Moheb v.
Nutramax Laboratories, No. 12-3633, 2012 WL 6951904, at

27

*8 (C.D. Cal. Sept. 4, 2012).  Here, Defendant sold at least 4.5 million units during the statutory period. As in Hodes, it is highly unlikely that class members have kept their receipts for the product at issue. Plaintiff states that damages can be calculated using retailers' sales data.  However, Plaintiff has not presented the Court with any method of verifying that self-identified class members suffered the alleged injury, or the amount of damages to which each class member is entitled.

Thus, Plaintiff has not met his burden of showing that Rule 23(b)(3)'s requirements are met here.

### IV.  CONCLUSION

For the foregoing reasons, the Court DENIES Plaintiff's Motion for Class Certification.

Dated:  January 7, 2013

Jesus G. Bernal
United States District Judge

28